**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A2057. THOMAS v. FULTON COUNTY BOARD OF DO-102 EDUCATION et al.

DOYLE, Presiding Judge.

Merita Thomas filed an application for discretionary appeal from a superior court order affirming the State Board of Worker's Compensation ("the Board"), which had overruled an Administrative Law Judge's ("ALJ") award to Thomas.[1] Thomas argues that the superior court erred by affirming the Board's order because (1) the Board incorrectly applied OCGA § 34-9-260 when calculating her average weekly wage; and (2) the Board incorrectly found that her second summer job was not concurrent employment for purposes of average weekly wage calculation. For the reasons that follow, we reverse and remand for further proceedings.

---

[1] This Court granted the application in an order dated May 22, 2014. Thomas timely appealed therefrom.

When reviewing awards in workers' compensation cases, both the appellate court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division of the State Board of Workers' Compensation. It is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding.[2]

Viewed in this light, the evidence shows that since 2008, Thomas has worked as a school bus driver for the Fulton County Board of Education ("Fulton County"). Thomas only drove the bus nine months of the year, but her salary was spread over twelve months. During the nine month school year, her hourly wage was $18.63, her hourly contract was for twenty-five hours per week, although she testified she spent forty-four hours per week working during the school year. She received $1,463 per month for summer months.

Over June and July of 2010 and 2011, Thomas worked for a second employer, Quality Drive Away ("QDA"), driving new school buses from Atlanta to other parts of the country. Thomas was paid per job based on mileage and other factors, and over June and July 2011, she worked eleven jobs, totaling income of $8,596.51 according

---

[2] (Punctuation omitted.) *Chambers v. Monroe County Board of Commrs.*, 328 Ga. App. 403, 404 (762 SE2d 133) (2014).

to her tax form from QDA; the last three jobs occurred in the thirteen-week period of July 20, 2011, to October 11, 2011, and the ALJ found she was paid $549.80, $601.30, and $576.43 for a total of $1,658.43 (the actual total wages for those jobs is disputed between the testimony provided by Thomas and the almost indecipherable pay slips). Thomas's last job for QDA ended on July 30, 2011, and she returned to her regular school-year job at Fulton County on an unspecified date thereafter.

The parties stipulated that Thomas suffered a compensable injury on October 19, 2011, and the 13-week period prior to her injury was July 20, 2011, to October 19, 2011, of which she worked approximately 11.5 weeks (beginning some time after July 30, 2011, which was a Saturday and her last day working for QDA). Although Fulton County accepted her claim, the parties disputed the correct calculation of Thomas's average weekly wage.

Thomas contended that her average weekly wage should be calculated pursuant to the method listed in OCGA § 34-9-260 (1), which is 1/13th of the total sum of the claimant's wages earned at both Fulton County and QDA during the 13-week period immediately preceding the injury — Thomas claimed this amount was $593.32. On the other hand, Fulton County argued to the ALJ that because Thomas had not worked during "substantially the whole" of the 13-week period, Thomas's average

3

weekly wage should be calculated pursuant to the method in OCGA § 34-9-260 (3), which is based on the "fulltime weekly wage" of the claimant, and that her wages from QDA should not be included in that calculation because it was not concurrent employment.

At the hearing, Fulton County's workers' compensation specialist testified before the ALJ that she calculated Thomas's "fulltime weekly wage" by applying her hourly pay rate of $18.63 per hour to her contract requirement of 25 hours per week, which resulted in an average weekly wage $465.75.[3]

The ALJ first concluded that Thomas's work for QDA was concurrent work for which her average weekly wage had to be calculated, and there was no requirement that the jobs for QDA be performed contemporaneous to the work for Fulton County in order to qualify as concurrent work. The ALJ found that OCGA § 34-9-260 (1) applied in this instance, so the formula for determining Thomas's average weekly wage was 1/13th of the total earnings for the immediately preceding 13-week period. The ALJ found that the weekly wage for Thomas for the Fulton County job was $465.75, totaling $6,054.75 for the 13-week period preceding the injury, and added

---

[3] The specialist also testified that no bus driver working for Fulton County worked the entire thirteen-week period preceding October 19, 2011.

4

to that total $1,658.43 for Thomas's work for QDA that occurred during the period; 1/13th of the $7,713.18 total resulted in an average weekly wage of $593.32.

Fulton County appealed, and the Board calculated an average weekly wage of $337.62 under OCGA § 34-9-260 (1). First, the Board determined that the ALJ correctly found that Thomas's work with QDA was similar to her work with Fulton County, but the jobs were not performed simultaneously when her injury occurred, and therefore, the ALJ had erred by finding the employment concurrent. Next, the Board determined that the ALJ's finding as to Thomas's weekly wage for her employment for the preceding 13 weeks was incorrect, and it instead calculated an average weekly wage of $337.62 by multiplying by 12 her summer monthly pay from Fulton County of $1,463.00 and then dividing that number by 52.

One Board member dissented from this opinion, and she stated that OCGA § 34-9-260 (3) was the appropriate method for calculating Thomas's average weekly wage because Thomas had not "worked" for Fulton County for the preceding 13 weeks. She also concluded that the Board majority had conflated the notion that Fulton County paid wages to Thomas for 13 weeks with the plain language of the statute, which required a showing that the claimant "worked" during the 13 weeks.

5

Thomas appealed the Board's opinion to the superior court, arguing that her average weekly wage should be calculated to include concurrent employment or that her average weekly wage should be calculated based on her fulltime weekly wage under OCGA § 34-9-260 (3). The superior court affirmed the Board's decision without explanation.

Thomas first argues that the superior court erred by affirming the Board.[4] Based on the plain language of OCGA § 34-9-260, we agree.

> OCGA § 34-9-260 provides that[] the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined . . . as follows: (1) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the 13 weeks; (2) If the injured employee shall not have worked in such employment during substantially the whole of 13 weeks immediately preceding the injury, the wages of a similar employee in the same employment who has worked substantially the

---

[4] For ease of assessment of the statute at issue, we have combined Thomas's enumerations of error. To the extent that Fulton County argues that Thomas waived the issue of concurrent employment, we hold that Thomas did not waive the issue and made the statements at issue in relation to a different subpart of the statute.

6

whole of such 13 weeks shall be used in making the determination under the preceding paragraph; (3) If either of the foregoing methods cannot reasonably and fairly be applied, the full-time weekly wage of the injured employee shall be used.[5]

"Employment . . . means the type or kind of employment, such as that of janitor, baker, truck driver, etc. It refers to the particular calling or kind of employment in which claimant was engaged at the time of his injury."[6] When Thomas was injured, she was working as a bus driver for Fulton County. She was working as a bus driver for substantially the whole of the 13 weeks immediately preceding her injury on October 19, 2011, because she worked as a bus driver for both QDA and Fulton County during the whole time. OCGA § 34-9-260 (1) explicitly contemplates work "*for the same or another employer*" and thus, because Thomas worked those 13 weeks for the same or another employer in the type of employment during which she was injured, her average weekly wage should have been computed based on her "total

_____

[5] (Punctuation omitted.) *Rheem Mfg. Co. v. Jackson*, 254 Ga. App. 454, 455-456 (562 SE2d 524) (2002).

[6] *Black v. American &c. Ins. Co.*, 123 Ga. App. 133, 135 (2) (179 SE2d 679) (1970).

7

amount of wages earned" for her work during the 13 weeks immediately preceding her injury — approximately 11.5 weeks with Fulton County and 1.5 weeks with QDA.

While this is slightly different than the "concurrent similar employment doctrine" enunciated in *St. Paul-Mercury Indem. Co. v. Idov*,[7] in that the claimant is not rotating back and forth between employers during the 13-week period, there is nothing in our case law which so narrowly defines "concurrent"[8] as the Board did so in this case, which construction is not "in keeping with the liberal construction awarded uniformly to the" Workers' Compensation Act.[9] When she was injured, Thomas had worked for Fulton County for many years and for the previous two summers for QDA, and there is nothing in the record to support a finding that she would not have done so the next summer. Thus, Thomas's employment with the two entities was concurrent with respect to the calendar year. "Where an employee is

---

[7] 88 Ga. App. 697, 700 (77 SE2d 327) (1953).

[8] Meriam-Webster defines concurrent as "1: operating or occurring at the same time; 2: a: running parallel; 2: b: convergent; *specifically*: meeting or intersecting in a point; 3: acting in conjunction; and 4: exercised over the same matter or area by two different authorities."
See http://www.merriam-webster.com/dictionary/concurrent (emphasis in original).

[9] *Idov*, 88 Ga. App. at 700.

working for several different employers and is injured, in order that he may be reasonably compensated for the loss of his earning powers, his total wages must be taken into consideration. Any other construction of the statute would result in great injustice and lead to absurdities."[10] Thus, the superior court erred by affirming the Board's erroneous application of OCGA § 34-9-260 (1).

That being said, while the ALJ purportedly applied OCGA § 34-9-260 (1), in reality it appears that her calculations were based on earnings that Thomas did not have during the 13-week period — the ALJ calculated this total using Thomas's "fulltime weekly wage" from Fulton County for the full 13 weeks rather than the "total amount of wages earned" for the weeks Thomas worked with Fulton County. Thus, the ALJ's calculation was erroneous.

Accordingly, we reverse the judgment of the superior court and remand the case for further proceedings in accordance with this opinion.

*Judgment reversed and case remanded. Miller and Dillard, JJ., concur.*

---

[10] Id.