ALBERT E. EDHOLM, APPELLEE, V. KATHERINE R. J. EDHOLM, APPELLANT.

FILED FEBRUARY 5, 1916.   No. 18577.

1. **Divorce: APPEAL: REVIEW.** On appeal from a decree of divorce, the supreme court will examine the evidence, draw its own independent conclusions therefrom, and, if the evidence supports the findings of the district court, the decree will be affirmed.

Edholm v. Edholm.

2. ——: ALIMONY. $25,000, the alimony award to the defendant, together with $50 a month for the support and education of the minor daughter of plaintiff and defendant, under all the conditions as shown by the record, is *held* to be reasonable and should not be either diminished or increased.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*Brome & Brome* and *William G. Stewart,* for appellant.

*Carl E. Herring* and *Jefferis & Tunison, contra.*

HAMER, J.

This is an appeal from a judgment of the district court for Douglas county granting the plaintiff, Albert E. Edholm, a divorce from his wife, Katherine R. J. Edholm. The plaintiff charged defendant with extreme cruelty toward him, and prayed for a divorce and the custody of their minor child, Camilla. The defendant by her answer denied the allegations of cruelty alleged in plaintiff's petition, and by way of cross-petition charged plaintiff with extreme cruelty and prayed for a divorce. The reply was a general denial of the facts alleged in defendant's cross-petition. The trial court found for the plaintiff and against the defendant, and entered a decree for an absolute divorce in his favor, gave the defendant the custody of her minor daughter, and permanent alimony in the sum of $25,000, with $50 a month for the support of the minor child, and both parties have appealed, and both parties contend that the decree is not sustained by the evidence.

The record recites that the plaintiff was married to the defendant in Omaha, Douglas county, Nebraska, on the 17th day of November, 1900, and that he has since resided in Omaha, and is engaged in the jewelry business in said city, and has been so engaged for more than 23 years, and that he has maintained a jewelry store at 107 North Sixteenth street until January, 1905, when he removed the same to 323 South Sixteenth street, where he is still engaged in the business; that the issue of the marriage is

one child, Camilla, whose age was 12 years on the 19th of November, 1913; that the defendant has been guilty of extreme cruelty toward the plaintiff, consisting of angry words and exhibitions of ill temper, all without excuse or justification of any kind; that the defendant was accustomed to finding fault with the plaintiff, and had frequent outbursts of ungovernable rage and impatience; that she refused to be present in the plaintiff's store during the Christmas holidays, and expressed to the plaintiff in violent language her contempt and detestation of his business as a jeweler, and she criticised trades people in general and condemned them as unworthy of confidence and as belonging to a rank much lower than herself and her family, who associated only with doctors and lawyers and army officers; that she belittled the plaintiff's business and sought to make him abandon it, and ridiculed him for following such a business; that she found fault with the plaintiff concerning money matters, although the plaintiff was generous and kind to her in providing for her present wants, and even went so far as to pay the bills which she had contracted prior to her marriage with the plaintiff; that she continued to find fault with the plaintiff concerning money matters from the time of her marriage with him up to the day of filing the petition; that she charged the plaintiff with failing to provide her with spending money according to her station in life; that these complaints were all unjust, wrongful and cruel, and made without reason or justification; that she constantly found fault with the plaintiff and criticized and condemned him, and exercised her ill-governed temper upon him; that she took a special delight in finding fault with the plaintiff to his friends and acquaintances; that she would quarrel with the plaintiff in public and apparently to attract attention; that she would quarrel without cause with the carpenters and builders at work on plaintiff's proposed residence; that the defendant objected to plaintiff coming home to lunch; that plaintiff was ill much of the time and was afflicted with insomnia, which was greatly aggravated by the

defendant's misconduct; that defendant connived with certain employees in the store and tried to create discord and contention between plaintiff and his employees in his jewelry business, and thereby injured the plaintiff's business; that defendant charged the plaintiff without cause with sustaining improper relations with women employees in the store and also with other women; that she demanded of the plaintiff that he commit acts of infidelity with women; that the defendant would purchase and bring home vile and indecent books; that she was accustomed to use vile and indecent language; that while plaintiff was in ill health and suffering from insomnia the defendant persuaded him to embrace the faith of Christian Science, and that, when the plaintiff purchased and brought home books expressing a belief in Christian Science, she ridiculed that faith and wrote vile and indecent statements on the books and defaced and destroyed the same; that this was done to dishearten the plaintiff and destroy his peace of mind; that defendant would jerk the Christian Science books out of the plaintiff's hands and spit upon them and throw them on the floor.

The petition also sets up numerous acts of physical violence on the part of the defendant toward the plaintiff; that she threatened to kill the plaintiff, and locked him in the basement of the home; that she threw dishes at him when he was seated at the table; that she has thrown the contents of her plate at the plaintiff; that she pointed a loaded revolver at him and threatened to kill him, and on another occasion bit the plaintiff and struck him with great force and violence; that at another time, when the plaintiff accidentally knocked over a bottle of bay rum in the bathroom and spoke about it at the dinner table, the defendant seized a plate and threw it and its contents at the plaintiff, and, when the plaintiff procured for the defendant another plate, the defendant caught it and took it away from the plaintiff and hurled it at him with great force; that on this occasion she called him a "damn fool" and an "idiot," and said just one more word from him and

she would "fix" him; that the defendant neglected her home and home duties and the plaintiff, and gave the greater part of her time to the National Association for the Prevention and Study of Tuberculosis and the sale of Red Cross stamps; that she has also given much of her time to engagements of the nature of matinees, parties, luncheons, women's clubs, and directors meetings; that the defendant has traveled for long periods of time to California, New York, and other places; that she has also estranged the plaintiff's daughter and deprived the plaintiff of her love and affection; that she continually misrepresents the plaintiff to his said daughter and tries to establish in the mind of said child that her father is unworthy of being trusted; that the plaintiff has endeavored to discharge his marital obligations, and has done all things within his power to fulfil his duty to his wife and child.

The decree appealed from recites that the cause came on for further consideration, the same having been heretofore submitted to the court on the petition of the plaintiff, the answer and cross-petition of the defendant, the supplemental answer and cross-petition to the answer and cross-petition and supplemental answer and cross-petition of the defendant, and the evidence and arguments of counsel. The decree is very long, and it will not be necessary to specifically point out the several findings. It is enough to say in a general way the decree is for the plaintiff and against the defendant, except that the court finds that it is proper to award the defendant and cross-petitioner permanent alimony in the sum of $25,000, together with the household goods, except the personal effects and belongings of the plaintiff, now situated in No. 116 South Thirty-sixth street, Omaha, Nebraska. The court also finds that it is proper to award the defendant, in lieu of interest upon permanent alimony, temporary alimony, in some amount for the support of the defendant and the child, Camilla. The court further finds that the plaintiff is possessed of property, real and personal, of the reasonable value of $110,000. The court further finds in favor of the plaintiff

and against the defendant upon the charges of extreme cruelty practiced on the part of the defendant toward the plaintiff, and finds that the defendant has been guilty of acts and conduct toward the plaintiff constituting extreme cruelty without any just cause or provocation therefor, and as alleged in plaintiff's petition and established by the evidence, and that said plaintiff is entitled to an absolute divorce from said defendant on the ground of extreme cruelty practiced by the defendant toward the plaintiff. The court finds against the said defendant generally upon her answer and cross-petition to the plaintiff's petition. We think it unnecessary to further quote from the findings and judgment of the court.

The record discloses that Mrs. Edholm, prior to her marriage to Mr. Edholm, had spent some time in coaching and instructing public readers and platform speakers. Mr. Edholm was a jeweler, and seems to have worked hard at his trade, and also as a salesman in his store. Their occupations had been of a different character and perhaps were not well calculated to make them sympathize with each other. While Mr. Edholm was successful in his line of business, that fact does not seem to have commended him to Mrs. Edholm. She is shown to be a woman of much intelligence and great force of character, but she seems to have a crisp temper that is most easily provoked, and at such times she is subject to ungovernable fits of rage. Mr. Edholm was in feeble health and afflicted with insomnia. He was in a condition that required and demanded the affectionate services of a faithful wife. They lived together as husband and wife about 12 years, and it is not at all in doubt that they led most unhappy lives. Apart from the matter of physical violence, the defendant is shown to have unnecessarily annoyed, disturbed and mistreated the plaintiff. She dominated the husband, and the evidence shows that she made existence utterly miserable for him. Mrs. Edholm claims that the plaintiff was niggardly and mean in the matter of household expenses. They had their own house, and therefore they had no rent

Edholm v. Edholm.

to pay. Their living expenses are shown to have been about $200 a month, which he paid. The evidence clearly shows extreme cruelty on the part of the defendant toward the plaintiff. The plaintiff seems to have treated his wife kindly. She did not permit him to say much, but he was apparently trying as best he could to conciliate her and to get along agreeably. It is not necessary to further dwell upon the details of the evidence. It is fully sufficient to sustain the decree of the district court.

Mrs. Edholm was allowed $25,000 alimony, and all the household furniture, and the additional sum of $50 a month for the support of the child. From this allowance of alimony the plaintiff has taken his cross-appeal. This would seem to be a very liberal allowance, perhaps more than the defendant should have been given. It is for us to remember that the judge of the district court was closer to the parties than we are, and that he had a better opportunity to judge than we have. In this particular we do not care to disturb his findings and judgment.

The judgment of the district court is in all things

AFFIRMED.

MORRISSEY, C. J., and FAWCETT, J.

We think the judgment should be affirmed, except that the amount allowed as alimony should be materially reduced.

SEDGWICK, J., concurring.

I think that the case is not free from doubt, but the evidence before the trial court appears sufficient to establish that these parties cannot reasonably live together as husband and wife. The trouble appears to arise from the conduct of the defendant, amounting to extreme cruelty within the meaning of the statute. The amount allowed the defendant seems large under the circumstances, but it would perhaps be difficult to fix any other amount with certainty that would be nearer to exact justice between the

parties. For the reasons above stated, I agree that the judgment of the trial court should be affirmed.

LETTON, J., concurs in the above.

ROSE, J., dissenting.

With the exception of domestic conduct growing out of marital infelicity, I find nothing reflecting on either of the parties. They have a daughter growing into womanhood. She is not responsible for having been born into an unhappy home. In determining the merits of the controversy between her parents, she should not be subjected to avoidable embarrassment. I hoped the opinion adopted by this court and published by the state would justify itself, and that it would omit unnecessary details of the charges of cruelty made by the father against the mother. I therefore dissent from the form and substance of the opinion.